WILDER PIERCE, Appellant, *vs.* JAMES KNEELAND and EPHRAIM MARINER.

APPEAL FROM CIRCUIT COURT, MILWAUKEE COUNTY.

Heard June 30.]                    [Decided July 6, 1859.

*Orders and Decrees—Sales on Judgment—Estoppel—Jurisdiction—Notice.*

When an order has been made in the circuit court, refusing to confirm a sale, and on appeal, the supreme court reversed the order, and remitted its decision to the circuit court for further proceedings ; it is not necessary to give notice to the opposite party of an application to enter an order in conformity to the opinion of the supreme court.

Pierce vs. Kneeland et al.

The final decision of the supreme court upon an order of the court below, is final and conclusive upon the parties, upon all questions touching the matter contained in the order, and cannot be again contested by them.

The case of *Hill vs. Hoover. Supra.* See p. 15. Considered and approved.

When a party is called upon in legal form to establish a cause of action or defence, he must do so by proving all the facts within his power, and if he purposely, or negligently fail in doing this, he will not afterwards be permitted to deny the correctness of the determination, or renew the controversy.

So, if a defendant resists the confirmation of a sale, he cannot, except upon newly discovered facts and evidence, afterwards move to have the sale itself set aside; for in general, whatever would prevent the confirmation, would be sufficient to set aside the sale.

Objections to the confirmation of a sale must necessarily be some matters or things growing out of the sale itself or the manner of conducting it.

In general when the court would refuse to confirm a sale, it would, on motion founded upon the same state of facts, set the sale aside and *e converso*.

A case may be taken out of this general rule, by the presentation of special circumstances ; such as newly discovered evidence, &c.

The doctrine of "*res adjudicata*" considered and applied.

The facts in this case may be stated thus : On the 6th day of December, 1856, the plaintiff, Pierce, commenced his action in the circuit court for Milwaukee county, for the foreclosure of a mortgage against the defendant Kneeland as mortgagor, and the defendant Mariner as a subsequent purchaser of all or some portion of the mortgaged premises. On the 10th day of March, 1857, the defendants filed their answer to the complaint, to which answer the plaintiff subsequently replied. The cause was brought to trial at a term of that court holden in November, 1857, and upon the trial the plaintiff produced and read in evidence the bond and mortgage set forth in the complaint. The defendants offered no testimony, and on the 9th day of November judgment of foreclosure and sale in the usual form was rendered in favor of the plaintiff for $9,236 11 debt, and $188 05 costs. On the 19th day of November the sheriff of Milwaukee county, pursuant to the judgment, advertised the mortgaged premises to be sold on the 2d day of January, 1858. On the day appointed for the sale, but before the same had been made, the defendants appealed from the judgment to this court, by serving notices thereof upon the clerk of the circuit court and the attorneys for the plaintiff, and at the same time filing with the clerk

Pierce vs. Kneeland et al.

the undertaking required by § 244 of the code, and serving a copy thereof upon the plaintiff's attorneys with the notice of appeal. No undertaking for the purpose of staying proceedings in the cause, as required by § 248 of the code, was filed, served or executed. This appeal was never prosecuted in this court to a final hearing, but at the January term, 1859, was dismissed on motion of the appellants. The sale took place on the 2d day of January, pursuant to the advertisement made by the sheriff, and the mortgaged premises were struck off to the plaintiff for the sum of $1,000. On the 8th day of January the sheriff filed with the clerk his report of sale in due form, and on the 16th the plaintiff having given previous notice thereof to the defendants, moved the court for an order of confirmation of the sale. This motion the defendants resisted, and for that purpose the defendant Mariner made and filed an affidavit in which he stated, that on the 2d day of January, in the forenoon he served on the attorneys for the plaintiff, Messrs. Brown & Ogden, a copy of an undertaking on appeal and notice of appeal in this cause, heretofore filed with the clerk of the circuit court, which undertaking provided that the appellants would pay all costs and damages which might be awarded against them on appeal, not exceeding the sum of two hundred and fifty dollars, agreeably to § 244 of the code, and that the defendant James Kneeland should pay the amount of any deficiency which might arise from the sale of the mortgaged premises, and was executed by two sureties, who had justified; that he had previously filed said undertaking, with notice of such appeal, with the clerk of said court, and during the forenoon of the same day gave notice thereof to the sheriff of Milwaukee county. That he then and still believed he had taken every step necessary in the law to procure a stay of proceedings in said cause, and supposing that said proceedings had thereupon been stayed, he did not attend at the time and place advertised for the sale of the mortgaged premises; that the plaintiff's attorneys disregarded the proceedings on appeal, and directed the sheriff to proceed with the sale as advertised, but did not give deponent notice of their intention so to do in any manner whatever; but on the contrary, when he served said plaintiff's attorneys with a copy of undertaking and notice of appeal, Mr. Brown, one of said attorneys, replied that the deponent had put him to the trouble of making an extra journey to Madison to dismiss his appeal upon

Pierce vs. Kneeland et al.

motion, which he should certainly do and get ten per cent. damages therefor. That said premises were of the value of about $25,000, and had been struck off to the plaintiff, as he was informed, for the sum of $1,000; and that but for his belief that proceedings would have been stayed, founded upon the proceedings which had been taken and confirmed by the declaration of the plaintiff's attorneys, the defendants would have in some manner arranged the matter, so that the premises should not have been sold, or if sold, should have brought a fair price, or would have attempted to obtain a stay of proceedings till the sufficiency of the proceedings on appeal could have been determined. Upon the facts contained in this affidavit the circuit court refused to confirm the sale, and on the 23d day of January overruled the plaintiff's motion therefor. From this order and decision of the circuit court the plaintiff on the same day took an appeal to this court, which, at the June term, 1858, was heard and determined, and the order of the court below reversed and remitted for further proceedings. On the 25th day of October, 1858, after the remittitur was returned and filed, the plaintiff, without further notice to the defendants, applied to the circuit court for an order confirming the sale in accordance therewith, and such order was thereupon made and the sale confirmed. On the 6th day of November the defendants each made and filed with the clerk of the circuit court an affidavit. Said Kneeland in his affidavit stated that he was one of the defendants, and an appellant from the original judgment of foreclosure and sale; that he had employed counsel to take such appeal and execute the undertaking thereon; that he was at that time positively assured by his counsel and verily believed that such undertaking under the appeal was sufficient to stay proceedings on the judgment; that, relying upon such stay, he did not attend at the time and place advertised for the sale, and that the mortgaged premises were struck off to the plaintiff for the sum of one thousand dollars, which was about one-twentieth part of their value; that he was able to pay and thereby offered, if the sale and confirmation should be set aside, and a re-sale ordered, to bid and pay at such sale for the mortgaged premises the amount of the judgment and costs. That but for his understanding that proceedings upon the judgment had been stayed by the appeal and the undertaking which had been executed and filed, he would have made out and executed a new undertaking

which would have been sufficient; and would if he had known that such sale would in any event have been made, attended at such sale and bid, or procured bidders, and have bid and paid the amount of the judgment and costs. That he had been informed and believed that there was but one bidder present at such sale, and but one bid made, and that by the solicitor for the complainant. That at the time of such sale the mortgaged premises were divided into six separate and distinct parcels of land by streets which had been graded, and all but one of such parcels was enclosed with a fence; that the premises were sold, as he was informed, in one parcel; and that if such premises had been sold in parcels according to the division made by the streets, they would have brought a much large sum in the aggregate than if sold in one body.

That said premises were originally purchased of the plaintiff and that four thousand dollars were paid to him at the time of the purchase; that the defendants have expended over seven hundred dollars in grading the streets through and inclosing the same; that the judgment in the cause was rendered for the balance of the purchase money; and that if said sale was confirmed the plaintiff would have received four thousand dollars already paid for the land and have a judgment against him for $8,573, besides retaining the land originally purchased.

The defendant, Mariner, in his affidavit, stated that he had had no notice of the motion to confirm, made on Saturday last, except that his attention was called to the same at the time it was being heard; that he then and there objected to such confirmation, for the reason that he had no notice of the application therefor; that a motion had been made for a re-argument of the appeal from the refusal of the circuit court to confirm on a former day, and that he wished time to be able to see the opinion of the supreme court, which he had not been able to get; and that he wished to show further cause why the sale should not be confirmed; that in addition to the matters thereinbefore set forth, he had been informed and believed that, at the time of the sale of said premises by the sheriff, there was but one bidder present, and but one bid made, which was the bid of the plaintiff.

Upon these affidavits the defendants, on the same day, obtained from the circuit court an order requiring the plaintiff to show cause on the 10th day of November, why the sale and confirmation should not be set aside with costs.

On the day specified in the order, the plaintiff appeared and resisted the application to set aside the sale and confirmation, and filed the affidavits of James S. Brown and Thomas L. Ogden, his attorneys, for that purpose. Said Brown, in his affidavit, stated that, after the sale and before the appeal of the plaintiff from the order of the circuit court overruling the motion to confirm, and, as he believed, upon the argument of that motion, he proposed to Mr. Mariner, attorney for the defendants, that the attorneys for the plaintiff would consent to vacating the sale, if the defendants would pay the amount of the decree and costs; that he again, after the appeal, and at about the time of the argument of the same in the supreme court, made the same proposition to Mr. Mariner, and was then ready and willing to carry it out, but that said Mariner, on both occasions, refused to make such payment; that at the time these offers were made by him, he, as attorney for the plaintiff, was very anxious that the proposition should be accepted and the money paid, from a belief that the plaintiff then greatly needed the money, and that the delay had been such since said proposition, and the expense of the plaintiff in the appeal so great, that he believed it would be injustice then to set aside the sale.

Said Ogden in his affidavit stated that the mortgage for the foreclosure of which said suit was brought, had been due and payable nearly a year; that he verily believed the defendants had no defense to said mortgage and defended the collection thereof merely for delay; that to his knowledge, and, as he verily believed, the defendants had never tendered the amount due upon said mortgage; that there had been no legal plat of said land recorded, and, as he believed, there was no authority in the city at the time of the decree and sale to make streets through the premises; that, as attorney for the plaintiff, he attended the sale, and that many other persons were present, though no other bid was made.

Upon the filing of the foregoing affidavits of Messrs. Brown and Ogden, the defendant, Kneeland, made and filed a further affidavit, in which he stated that he heard the affidavits of said Brown and Ogden read, and that said Brown had not made to him at any time, a proposition that the attorneys for the plaintiff would consent to vacate the sale if the defendants would pay the amount of the decree and costs; nor was he informed that any such proposition or offer had been made to the defendant, Mariner, until some time in the early part

of the last October; that he then heard that such proposition had been made by Mr. Brown, and immediately had a conversation with him upon the subject, and learned from him that the plaintiff's attorneys were willing to receive the amount due to the plaintiff for his debt and costs, if their client would convey the premises; that he immediately acceded to said proposition, and it was arranged that Messrs. Brown and Ogden should write to their client and obtain a power of attorney or deed of conveyance, to enable them to carry out said agreement; that he then and still was ready to carry out said agreement on his part; and that said Brown and Ogden did write their client upon the subject, and sent to him a power of attorney, as he was informed and believed, but had received no authority to make conveyance or carry out the proposition. He further stated that neither was the defense interposed nor the appeal taken for the purpose of delay; that the city of Milwaukee had actually taken one-third of the property, which the plaintiff covenanted should be free and clear from all incumbrance, and used and occupied the same; and that up to the time of the decision of the case of the City of Milwaukee against Lumsden, he had not entertained a doubt but that such portion was legally taken, and that he was then advised that the plaintiff and his grantees were estopped by record from denying the fact.

Upon this application and these affidavits the circuit court, on the 27th day of December, 1858, granted the motion and made an order setting aside the sale and order of confirmation; and it is from this order that the present appeal is taken.

*Ogden, Brown & Ogden*, for the appellant.

*Palmer & Mariner*, for the respondent.


*By the Court*, DIXON, C. J. From the view we have taken of this case, it will only become necessary to discuss, at much length, two of the questions involved in it.

1. Whether, after having appealed to this court from the order of the court below, made on the 23d day of January, 1858, refusing to confirm the sale, and this court having reversed that order, and remitted its decision to the circuit court, it was necessary for the plaintiff to give notice to the

Pierce vs. Kneeland et al.

defendants of his application for a confirmation of the sale, pursuant to the decision made here, and ;

2. Whether the decision of this court, upon the order of the court below reversing the same, was final and conclusive upon the parties, upon all questions touching the sale and the confirmation thereof.

Upon the first question we feel no doubt in saying that it was not necessary for the plaintiff to give to the defendants any other or further notice of his application for a confirmation than he had already done. He had once given them a fair and legal notice of the motion, and they had been heard upon it both in the court below and in this court, where it had been finally determined. Nothing remained to be done except for the circuit court to confirm the sale in accordance with the decision made here, and, as it was one continuous proceeding, for that purpose, the original notice must be deemed sufficient. A further notice could be of no possible utility to the defendants. We know of no rule, and can imagine no reason for requiring it.

We should not attempt a discussion of the second proposition so soon after our decision of the case of *Hill vs. Hoover* (a case so nearly allied in principle and fact to the one under consideration, that it is difficult to note a distinguishing characteristic or feature) argued and determined at this term; the opinion in which was announced, but a day or two before this case was argued, were it not that on the argument the correctness of that decision was somewhat called in question, and had it not been claimed that a substantial difference existed between the two cases.

We presume that no one will be found to dispute the proposition, that when a question of law or fact has once been determined by a court of competent jurisdiction, it cannot, except in some of the modes of review provided by law, be again contested between the same parties, whether in the

same or any other court.    This rule has found a place in every well regulated system of laws for the government of mankind.    The necessity for it exists in the very nature of things; without it no laws could be enforced, litigation would be fruitless as well as endless, and rights, whether public or private, could never be protected, and wrongs never redressed.

It follows, as a consequence of this rule, that a party, when called upon in legal form to establish a cause of action or defense, must do so by proving all the facts within his power, and that if he purposely or negligently fail in doing this, he will not afterward be permitted to deny the correctness of the determination, or renew the controversy.

The question is, whether these familiar principles are applicable to a motion or proceeding like the present.    In the case of *Hill vs. Hoover*, we held that they were so applicable. In that case a motion was made by the defendant in the circuit court to vacate the order of confirmation, and set aside the sale, which that court refused to do, and the defendant appealed to this court, where the decision of the circuit court was affirmed, except that the order of confirmation was set aside for want of formal proof by the printer of the publication of the notice of sale.    This defect being supplied, the sale was again confirmed by the circuit court; subsequently the defendant, upon the same and other grounds in addition to those embraced in the former motion, made another motion in the circuit court to vacate the order of confirmation, and set aside the sale.    It appeared that the additional reasons set forth on the second application, were known to the defendant at the time of his making the first.    And, upon appeal, we held that the proceedings had upon the first motion, were a bar to those attempted on the second.

It is claimed that there is a broad difference between that case and the present; that there the defendant was the moving party, and in each instance asked to have both the order

Pierce vs. Kneeland et al.

of confirmation and sale set aside, whilst here the defendant, in the first instance, only resisted the plaintiff's motion for confirmation, and subsequently himself moved to have both the order confirming the sale, and the sale itself set aside. In the first place, the order of confirmation is so intimately connected with, and so entirely dependent upon the regularity and sufficiency of the sale, that in general, it may be said, that whatever would be regarded as a good cause for refusing to confirm, would likewise be deemed a sufficient reason for setting aside the sale.

It is true, that sometimes, as in the case of the defective proof of publication as in *Hill vs. Hoover*, an objection to the confirmation may exist which does not reach back to or affect the sale. Yet even there, *prima facie*, the sale was irregular, and had not the publication, in fact, been regularly made, and proper proof thereof obtained, it would have been sufficient cause for setting it aside, so that, generally, whatever is fatal to one will also be fatal to the other. Objections to the confirmation must necessarily be some matters or things arising or growing out of the sale itself, or the manner in which it was conducted, and in general, where the court would refuse to confirm, it would, if a motion were made upon the same state of facts, set the sale aside, and *vice versa*.

It is impossible for us to conceive a case where a court, after having decided upon and granted a motion to confirm a sale, which was contested upon its merits, would feel itself at liberty to allow a motion to vacate the order of confirmation and open the sale, except it should be in a case which would take it out of the general rule, such as newly discovered facts or evidence. It is equally impossible for us to see any substantial difference between resisting a motion for confirmation on the merits, and moving on the merits to vacate the order of confirmation, or open the sale; or to see how an order of confirmation can be deemed final and permitted to

Pierce vs. Kneeland et al.

stand, and yet the sale itself be set aside. We think the decision of this court upon the appeal from the order of the court below, refusing to confirm the sale, reversing that order; and the subsequent confirmation in that court pursuant to the decision made here, was conclusive upon the parties, as to all matters touching the sale. The estoppels created by the decisions of courts are mutual, and equally binding on all the parties thereto.

In the case of *Simpson vs. Hart*, 1 John. Ch, Rep. 91, Simpson having recovered in the mayor's court of the city of New York, a large judgment against Hart, and Hart, at the same time, having recovered a smaller judgment against him, applied to the mayor's court by *motion* to have the latter judgment *deducted* from the former, which motion the *recorder*, with full knowledge of the facts, denied. Subsequently Simpson filed his bill in chancery, stating the facts, and praying an injunction to stay the proceedings on the judgment in favor of Hart, and to have so much of his judgment set off against the judgment in favor of Hart as would satisfy the same. The chancellor dissolved the injunction for the reason that the decision of the *recorder* upon the *motion*, was *res adjudicata* and conclusive. In commenting upon the case, he says: "This case is one of the strongest against the interference of this court that could well be presented, for the party is not seeking relief against his own laches, or mistake, or fraud; but he is seeking for a review of his case, after failing, in a voluntary application to the equitable powers of the mayor's court, on the very point now submitted; and after the application had been received, heard, and denied. If this fresh attempt could be sustained, there would be no equality between the parties. The remedy would not be reciprocal, for if the set off had been allowed in the mayor's court, it will not be contended that the defendant could have been relieved here against it."

Pierce vs. Kneeland et al.

So, too, in this case, there must be an equality of rights and remedies between the parties, and if this court had affirmed the order of the circuit court refusing to ratify the sale, would any one contend that it would have been competent for the plaintiff again to move there for a confirmation; and for that court, upon his so doing, to have reversed its own and the decision of this court, and confirmed the sale? If this could be done once, might it not be done the second, or third, or more times; and if so, how many decisions of this court, in a single cause, would it take to constitute a final judgment? We hold the decision made here upon the former appeal to be as binding and conclusive upon us, unless reviewed in the mode prescribed by law, as it was upon the circuit, or any other court. The motion here is distinct from, and independent of the former one, and by it the defendants seek to review the very question which was then finally determined by this court, which was, whether the sale should be ratified and permitted to stand or not

But it is said that on the present application further facts are shown. Grant it. It likewise clearly appears that the additional facts now relied upon were within the knowledge and reach of the defendants at the time they first appeared and resisted the plaintiff's motion to confirm; and we hold it as an incontestible rule in such cases, that a party who seeks to take advantage of irregularities or defects, must bring forward all his objections at once, and that he will not be permitted to parcel them out, and produce them piecemeal. Any other rule would be absurd, and would lead to endless and crushing litigation. If it were otherwise, a defendant conceiving himself to have several objections to a confirmation, could bring them forward, one after the other, and try them separately in the court below, and then in this court upon appeal. Nay more, if the theory of the defendants be true, after his several objections had been tried in this manner, heard

and determined against him, he could, because he had there-
tofore been *resisting* motions instead of *making* them, com-
mence making cross-motions to set aside the order of confirm-
ation, which the plaintiff had thus obtained, and one by one
review the same objections, as well as others, and again go
through with the same process of trial and appeal. Thus it
would happen that years of most vexatious and oppressive
litigation would be required to determine whether a sheriff's
report of sale should be confirmed or not.

Before dismissing this subject, we propose briefly to notice
some of the authorities which we think have a bearing upon
it. In the case of *Greatheard vs. Bromley*, 7 Term R., 455,
where a summary application to set aside an annuity for non-
compliance with the requisites of 17 Geo., 3, c. 26, had been
discharged upon discussion upon the merits, the court refused
to entertain a similar application between the same parties,
on the same state of facts, though grounded upon a new ob-
jection to the annuity, not before urged or considered.

In the subsequent case of *Schumann vs. Weatherhead*, 1
East., 527, which arose under the same statute, the defend-
ant, upon an affidavit made by him in which he stated that
upon the indenture, dated November 30th, 1793, by which
he had granted an annuity to the plaintiff for his own life,
there was indorsed a memorandum signed by the parties,
bearing date December 5th, 1793, in which it was agreed be-
tween them that he should be at liberty at any time to redeem
the annuity on giving six months' notice in writing to the
plaintiff, and paying owners, &c., had at a former term of the
court obtained a rule calling upon the plaintiff to show cause
why the judgment entered in the cause should not be vaca-
ted, and the warrant of attorney to confess judgment, and the
deed given to secure the annuity be declared void and deliv-
ered up to be cancelled. That rule was discharged because
the indorsement which *appeared* to have been executed at a

different time from the indenture, was not stamped, without which, considered as a separate instrument, though written on the same parchment, it could not be received in evidence. At a subsequent term a similar rule was obtained upon further affidavit, showing that the annuity was originally granted upon terms of being redeemable, but that, by mistake or neglect, the indenture had been drawn without such a clause, and therefore, when it was tendered for execution on the 30th of November, the day on which it was dated, and when it was intended to have been executed, the defendant on dis; covering the omission, objected to executing it, in consequence of which the indorsement was made before the execution of the instrument, and both were executed together on the 5th of December, the day the indorsement was dated. Although the court held that for the purpose of giving effect to the indorsement, it was competent for the defendant to show by affidavit, that it was in fact executed at the same time with the indenture, and that thus they were but one instrument; yet they decided, contrary to the substantial rights of the parties, that the former proceeding, was a bar, and that it could not be opened again. In passing upon the case Lord Kenyon, C. J., referred to his opinion in the former case of *Greatheard vs. Bromley,* and said : " That opinion was grounded upon the maxim, "*interest reipublicæ ut sit finis litium.*" Now, unless we are willing to rescind our opinions then expressed, that case must govern the present; for it stands directly on the same ground in every word and circumstance. All the facts existed within the knowledge of the parties at the time of the former rule pending, as are now brought forward. And though, if we had then been as fully apprised of all the circumstances as now, it might have altered our opinion ; yet it is better for the general administration of justice, that an inconvenience should sometimes fall upon an individual, than that the whole system of law should be

Pierce vs. Kneeland et al.

overturned and endless uncertainty introduced. I should be sorry to see one decision in 1798, and a different decision on the same facts in 1801. I think the rule was wisely and not arbitrarily laid down in the case referred to, founded upon analogy to proceedings in other cases."

These remarks bear with peculiar force upon the present case, which, it must be admitted, is one of singular and extreme hardship upon the defendants; yet we cannot forbear remarking, that they are by a long and expensive course of litigation, asking that at the hands of the court, which the plaintiff, at the outset, offered them as a gift. We might narrow the time and say we should be sorry to see one decision one day, and a different decision upon the same facts the next.

In the case of *Willett vs. Fayerweather*, 1 Barb. S. C. R., 74, where the defendant had once applied to the Vice Chancellor, for leave to withdraw his plea and file an answer, and that application had been denied without reserving the right to him to renew it; it was held that he could not renew it, except upon some matter which had happened, or for the first time came to his knowledge since the decision of the former motion. The court there says: " Every ground on which this application is founded existed at the time of the former motion, and was then as well known to the defendant as it is now. This motion cannot therefore be allowed to be made without disturbing all settled and salutary rules."

In the case of *Dodd et al. vs. Astor*, 2 Barb. Ch. R., 395, it was decided that after an order of a vice chancellor, denying an application upon the merits, had been affirmed by the appellate court, it was erroneous for him to permit the former motion to be renewed and to grant the application.

And in the *Utica Insurance Co. vs. Lynch*, id., 574, it was held that after an order of the chancellor confirming a master's report, and directing the payment of money, had been

affirmed by the appellate court, he was not authorized to set aside or alter the order as erroneous.

The same principle will be found to have been discussed and sustained in the following cases: *Downer vs. Cross*, 2 Wis., 371; *Cole vs. Clark*, 3 id., 323; *Cock vs. Brockhurst*, 13 East, 590; *Craig vs. Bagley*, 1 Monroe, 148; *Fribble vs. Frome*, 3 id., 51; *Simpson vs. Hart*, 1 John. C. R. 91; *Perine vs. Dunn*, 4 id., 140; *Groff vs. Groff*, 14 Serg. & R., 181; *Graty vs. Lum. Bk.*, 17 id., 278; *Hopkins vs. Lee*, 6 Wheat., 109; *Adams vs. Pearson*, 7 Pick., 341; *Goodrich vs. Thompson*, 4 Day, 215; *Campbell vs. Price*, 3 Mumf., 227; and *White vs. Atkinson*, 2 Call., 376.

It follows from the views we have taken, that the order of the court below vacating the order of confirmation and setting aside the sale in this case, must be reversed and the sale confirmed.