McGONIGAL, County Judge, vs. COLTER and another.

PLEADING. (1) *Demurrer — Res adjudicata.* (2, 3) *Joint demurrer by two defendants, for insufficiency.*

ADMINISTRATOR'S BOND *for sale of land.* (4) *Limitation of action thereon.* (5) *Presumption of law.*

ESTATE OF TESTATOR. (6–8) *Order in which property liable for debts.* (9) *Whether administration necessary.*

1. A demurrer to a complaint as not stating a cause of action, was sustained, no specific defect in the complaint being stated in the demurrer or order. An amended complaint alleging some additional facts was also demurred to as not stating a cause of action. *Held,* that the question thus raised was not *res adjudicata.*

2. A *joint* demurrer by two or more defendants on the ground that the complaint does not state a cause of action, is bad if a cause of action is stated against *one* of them. *Webster v. Tibbits,* 19 Wis., 438.

3. An order sustaining a demurrer in such a case errs in matter of substance, and must be reversed.

4. An action upon an administrator's bond given under ch. 65, R. S. 1849 (conditioned that the administrator should dispose of the proceeds of a licensed sale of lands of his intestate in the manner provided by law), is not barred until twenty years after the cause of action accrued. Tay. Stats., 1854, § 15.

5. The administrator received $697 in all, of which $342 were the proceeds of the personal property, and $355 were received from the sale of the land described in the bond in suit. The debts and charges against the estate, paid and directed to be paid by the administrator, amounted to $371; and on settlement of his administration he was directed to pay the balance to the guardian of the heirs-at-law; and this action was to recover the balance. *Held,* that it must be presumed that the whole of the proceeds of the personal estate were first paid by the administrator, and that the balance sued for was part of the proceeds of the land sold.

6. Under the statutes of this state, property left by a testator is liable for his debts as follows:

(1) Such debts are primarily payable out of the *personal* property of the estate.

(2) As between a *legatee* and the next of kin, the latter are first liable for such debts to the extent of the value of the assets received by them, and the legatee is liable only for any deficiency, to the extent of the value of the assets which have come to his hands.

McGonigal, County Judge, vs. Colter and another.

(3) In the absence of personal assets the debts must be paid out of the real estate.

(4) The rule between legatee and next of kin, with the limitations above stated, is applicable to devisee and heirs — the latter being primarily liable for the debts, and the devisee being liable only for the deficiency.

(5) The foregoing rules do not apply where the testator, by his will, *appropriates* certain portions of his property to the payment of his debts ; except so far as the property thus appropriated is *insufficient* for the purpose.

7. In an action against the sole legatee to recover a debt of the testator, the complaint is not bad because it fails to show that there was no real property of the estate not disposed of by the will — such property not being liable as against the legatee.

8. Where an estate was liable upon a bond upon which the decedent was surety, and the whole of the real property situate in this state, and all the personal property, were devised and bequeathed to X., who was and continues to be a resident of this state, and all the real property in a certain other state was devised to Y., who is a nonresident: *Held*, that an action upon the bond would lie against X., and that Y. was not a *necessary* or *proper* party thereto, the personal property being primarily liable and being ample for the purpose.

9. It is not necessary that administration be had of the estate of a decedent before a creditor of the estate can bring an action against the heirs, devisees or legatees; and where, as in this case, all the debts of the estate have been paid except the one in suit, and the sole legatee, who has received personal property of the estate in excess of all its liabilities, is within the jurisdiction of the court, there is no reason for incurring the trouble, delay and expense of an administration.

APPEAL from the Circuit Court for *Grant* County.

The defendant *Colter*, being the administrator *de bonis non* of the estate of Green W. Bruce, deceased, procured a license from the county court of Grant county to sell certain real property belonging to the estate to pay the debts of the deceased ; and the said *Colter* as principal, and one James F. Chapman as surety, executed to the county judge a bond, in the penal sum of one thousand dollars, conditioned that such administrator should dispose of the proceeds of such sale in the manner provided by law. This bond bears date October 2d, 1851, and

the same was required by the county court to be given by virtue of a statute then in force. R. S. 1849, ch. 65, sec. 8.

The administrator sold certain lands in Grant county, part and parcel of the estate of Bruce, pursuant to such license, and received $355 as the proceeds of such sales. These sales were made in 1852 and 1853, and were duly confirmed by the county court, and conveyances executed by the administrator to the purchasers.

On the 7th day of March, 1854, the administrator rendered his final account of administration to the county court, and the same was settled and adjusted by the court as follows: He was charged with the receipt of $697 belonging to the estate, and credited with $362.25 paid out by him on account thereof. He was directed to pay the fees of the county judge amounting to $8.73, and was directed to pay the balance in his hands, being $325.97, to the guardian of the heirs-at-law of the intestate, who were then minors. The order or decree of the county court making such adjustment has never been appealed from or disturbed, but remains in full force, and no part of such balance of $325.97 has been paid to such guardian or heirs.

This action is brought upon said bond at the instance and for the use and benefit of Julia A. Pittman, one of the heirs-at-law, and William H. Clise, who is the assignee of all the other heirs-at-law of said Bruce; and the breach of the condition of the bond upon which the action is founded is the nonpayment of such balance as directed by the county court.

The foregoing facts are stated in the complaint. For the purpose of showing the liability of the defendant *Theophilus Chapman* upon such bond, the complaint alleges as follows:

"The plaintiff further shows that the surety in said bond, James F. Chapman, died testate in said Grant county, about the month of January, 1866; that in his last will and testament, admitted to probate by the county court of said Grant county on the 5th day of March, 1866, *Theophilus Chapman*,

his son, and James W. Seaton, were named and appointed executors; that neither of them gave bonds as prescribed by law, and neither of them ever assumed for any purpose to act as executor of said last will and testament; that no administration has ever been had upon the estate of said James F. Chapman, deceased, and no commissioners have ever been appointed to allow claims against the said James F. Chapman, deceased, or his estate; that said James F. Chapman left at his death two children, the said *Theophilus Chapman* and Mrs. Mary Elizabeth Burns, who were his only heirs; that by his last will and testament, James F. Chapman devised to said Mary Elizabeth Burns all his real estate situated in Monroe county, Indiana (which was a farm containing between one hundred and two hundred acres), and bequeathed to her, besides, the sum of one thousand dollars, which was paid to her by the said *Theophilus* out of the property of the deceased; that to the said *Theophilus* said testator devised all his real estate in said Grant county (being all the real estate owned by the said James F. Chapman in the state of Wisconsin), which was worth ten thousand dollars and more; and bequeathed to him all his personal property, worth upwards of ten thousand dollars; that the said *Theophilus Chapman* took all the said property so devised and bequeathed to him, immediately upon the death of his father, and from that time to this has held and enjoyed the same, or the proceeds thereof, except what he has paid in discharge of the debts of the deceased; that the said *Theophilus* preferred to settle up the business of said estate of his father without any proceedings whatever in the probate court of said Grant county, and accordingly, with the exception of this claim, he has long since paid and discharged all the debts and claims against the said deceased, or his said estate; that said debts amounted altogether to but a few hundred dollars, to less in fact than one tenth part of the personal property of said deceased, that under said will became his own; that the said James F. Chapman resided in said Grant

county at the time of his death; that the defendant *Theophilus* is a resident of said Grant county; that the said Mary Elizabeth Burns was at the time of the death of the said James F. Chapman, and ever since has been, a resident of the state of California; that at the time of the commencement of this action she was not within the state of Wisconsin, nor had she any property therein; that the said parties plaintiff in this action have frequently demanded the payment of the said money, ordered and decreed as aforesaid to be paid, of the defendants, but they have refused to pay the same."

The complaint contains descriptions of several parcels of land in Grant county which were thus devised to the defendant *Chapman*, and avers that the said lands when so devised were, and still are, worth at least ten times the amount claimed to be recovered in this action.

The defendants interposed a joint demurrer to the complaint, assigning as grounds thereof the following :

" 1st. This court has no jurisdiction of the subject of this action, in this : the persons for whose use this suit is brought must first exhaust their remedy in the probate court of Grant county, and by proper and legal administration upon the estate of James F. Chapman, deceased, secure the collection and payment of the claim sued upon in this action, before proceeding at law against the devisee or devisees of said Chapman, deceased.

" 2d. That there is a defect of parties defendant in this action, in this : Mary Elizabeth Burns, formerly Mary Elizabeth Chapman, daughter, heir and devisee of said James F. Chapman, deceased, is a necessary party defendant to said action, and should be joined as a defendant therein.

" 3d. That several causes of action have been improperly united in said action, in this : the plaintiff has united in this action a cause of action against the said *Hugh R. Colter* singly, or against him and his sureties, on his general bond as administrator *de bonis non* of the estate of Green W. Bruce, de-

ceased, with a cause of action against said *Hugh R. Colter* singly, or against him and his surety, upon his special bond given by him upon being licensed to sell certain real estate of said Green W. Bruce, deceased.

" 4th. It appears from the facts stated in said complaint, that the statute of limitations operated as a bar to the cause of action attempted to be set out therein, before this action was commenced.

" Lastly — Because the complaint does not state facts sufficient in law to constitute a cause of action."

The circuit court sustained the demurrer; and from the order sustaining the same the plaintiff appealed.*

---

* The following are the more important statutory provisions referred to in the discussion of this case. The citations are from Taylor's Statutes:

Ch. 100, § 6 (p. 1221), declares that " the personal estate of the deceased which shall come into the hands of the executor or administrator, shall be first chargeable with the payment of the debts and expenses; and if the goods, chattels, rights, and credits, in the hands of the executor or administrator, shall not be sufficient to pay the debts of the deceased and the expenses of administration, the whole of his real estate, except the widow's dower, or so much thereof as may be necessary, may be sold for that purpose," etc.

Ch. 101, § 61 (p. 1236), provides that " if the appointment of commissioners to allow claims shall in any case be omitted, and if the judge of the county court shall not act in the place of commissioners in the allowance of claims, no person having any contingent or other lawful claim against a deceased person shall thereby be prevented from prosecuting the same against the executor, administrator, heirs, devisees or legatees, as provided by law," etc.

Ch. 147, commencing on p. 1715, is entitled " of actions and proceedings by and against executors, administrators, and infants, and against the next of kin, heirs, legatees, and devisees, in certain cases." It contains the following provisions:

" § 29. Actions against the next of kin of any deceased person, to recover the value of any assets that may have been paid to them by an executor or administrator, may be brought against all of the said relatives jointly, or one or more of them, for the amount received by each of them.

§ 30. In such action the plaintiff shall be entitled to recover the value

McGonigal, County Judge, vs. Colter and another.

*Barber & Clementson*, for appellant, made the following among other points: 1. The circuit court had jurisdiction of the cause. (1) That court has power to hear and determine an action upon the administrator's bond. R. S., ch. 104. (2) Even if it had no jurisdiction of the action as against the defendant *Chapman*, there is nothing to prevent its proceeding

of all the assets received by all the defendants in the action, if necessary to satisfy his demand; and the amount of the recovery shall be apportioned among the defendants, in proportion to the value of the assets received by each; and no allowance or deduction shall be made from such amount on account of there being other relatives to whom assets have also been delivered."

§ 31 provides that any of the next of kin, against whom a recovery shall be had under the preceding sections, may maintain an action against the others, or any of them, for contribution.

" § 32.  Actions by creditors of any deceased persons to recover the value of any assets that may have been paid by any executor or administrator, to any legatees of their testator, may be brought against all of such legatees jointly, or against any single legatee separately.

" § 33.  In such action the plaintiff shall not be entitled to recover unless he shows: 1. That no assets were delivered by the executor or administrator of the deceased to his next of kin; or, 2. That the value of such assets have been recovered by some other creditor; or, 3. That such assets are not sufficient to satisfy the demands of the plaintiff.  And in the last case he shall be entitled to recover the deficiency.

" § 34.  The whole amount which the plaintiff shall be entitled to recover shall be apportioned among all the legatees of the testator in proportion to the respective amounts of their several legacies, and such proportion only shall be recovered of each legatee.

" § 38.  The heirs of every person who shall have died intestate, and the heirs and devisees of any person who shall have died after the making of his last will and testament, shall respectively be liable for the debts of such person, arising by simple contract or by specialty, to the extent of the estate, interest and right in the real estate which shall have descended to them from or been devised to them by such person.

" § 39.  But such heirs shall not be liable for any such debt unless it shall appear that the personal assets of the deceased were not sufficient to pay and discharge the same, or that after due proceedings before the proper county court, and at law, the creditor has been unable to collect such debt, or some part thereof, from the personal representatives of the deceased, or from his next of kin or legatees.

McGonigal, County Judge, vs. Colter and another.

against his codefendant, the principal in the bond; and the demurrer, being joint, is bad.   19 Wis., 438; 26 id., 219, 544; *People v. Mayor*, 28 Barb., 240.   (3) The circuit court may entertain an action against the next of kin, legatees, etc., of a deceased obligor upon a bond, or for any other surviving debt of the deceased.   R. S., ch. 147; Tay. Stats., 1715.   The question whether the facts stated are sufficient to charge the defend-

"§ 40.   In case the personal assets were sufficient to pay a part of such debts, or in case a part thereof shall have been collected as in the last section mentioned, the heirs of such deceased person shall be liable for the residue unpaid or unsettled.

"§ 41.   But the two last sections shall not affect or impair the liability of heirs for any debt of their ancestor, where such debt was by his will expressly charged exclusively upon the real estate descended to such heirs, or where such debt is by such will expressly directed to be paid out of the real estate descended, before resorting to the personal estate.

"§ 42.   It shall be incumbent on the creditors seeking to charge any heirs, to show the fact and circumstances herein required to render them liable.

"§ 62.   Devisees made liable by the foregoing provisions to the creditors of their testator, shall not be so liable unless it shall appear that his personal assets and the real estate of the testator, descended to his heirs, were insufficient to discharge such debt; or unless it shall appear that after due proceedings, before the proper county judge, and at law, the creditor has been unable to recover such debts, or some part thereof, from the personal representatives of the testator, or from his next of kin, or legatees, or from his heirs."

§ 64 declares, in substance, that the two last sections shall not apply to a case where the debt is by the will charged upon the real estate devised, etc.   § 65 requires the creditor seeking to charge devisees to show the facts required in said chapter to make them liable.   § 66 requires devisees to be "sued jointly" for any debt of the testator.   § 48 requires the heirs to be sued jointly for a debt of the ancestor.

"§ 58.   In actions brought against several heirs jointly, or several devisees jointly, the amount which the plaintiff shall be entitled to recover shall be apportioned among the heirs of the ancestor, or among all the devisees of the testator, in proportion to the value of the real estate descended to such heirs or devised to such devisees, respectively, as the case may be; and such proportion only shall be recovered of each heir or of each legatee [devisee]."

McGonigal, County Judge, vs. Colter and another.

ant *Chapman*, is not one of jurisdiction. 2. The second ground
of demurrer, viz., that Mrs. Burns is not made a party, is also
bad. The personal estate is first chargeable with the debts of
the deceased, and the real estate can be resorted to only when
the personal estate is deficient. Tay. Stats., 1221, § 6; id.,
1181, § 1; id., 1715. Legatees may be sued *separately* for the
debts of the testator. Tay. Stats., 1721, §§ 29, 30; id., 1722,
§ 32. Though heirs or devisees are to be *sued jointly* (Tay.
Stats., 1724, § 48, and 1726, § 66), they are not *joint debtors*
within the meaning of subd. 1, sec. 18, p. 1433, Tay. Stats., so
that all may be named defendants, and, where all are not
served with process, judgment may be entered in form against
all. *Kellogg v. Olmsted*, 6 How. Pr. R., 487. How, then, his
sister being beyond the jurisdiction of the courts of this state,
could *Theophilus Chapman* be sued at all as a devisee of
his father, if not separately? Manifestly the statute requiring
heirs and devisees to be sued jointly must mean such heirs and
devisees only as are subject to the jurisdiction of the court;
otherwise, in some cases creditors of an estate would have no
"certain remedy in the laws." Again, if it were necessary to
charge the defendant *Chapman* as a *devisee*, he would be liable
upon another consideration. Creditors resident here have the
right to resort to the deceased debtor's property in this state
for satisfaction of their debts in full, and are not bound to seek
his property in another state, though that may be the place of
principal administration. Redf. on Wills, Part 2, p. 19, Nos.
11 and 12. Therefore by heirs and devisees as mentioned in
ch. 147, R. S., must be understood *heirs and devisees of land
situated in this state*. Where joint debtors reside in different
states, they may be sued separately in the states having juris-
diction of their person or property. *Brown v. Birdsall*, 29
Barb., 549. Moreover, if *Chapman* has an interest in having
Mrs. Burns joined with him as defendant because she ought to
contribute to the payment of the debt. *Colter* has no such inter-
est, and the joint demurrer is bad. *People v. Mayor*, 28 Barb.,

240; *Wooster v. Chamberlin*, id., 602; 14 How. Pr. R., 460; 14 Abb., 80. 3. The third ground of demurrer, viz., a misjoinder of causes of action, is bad. The only cause of action alleged is on the administrator's bond given on obtaining a license to sell land, to recover the surplus arising from such sale, found to be in the administrator's hands. Counsel here argued at length that the complaint showed sufficiently that the money found in the administrator's hands were proceeds of a sale of real estate. He also argued that the defendant *Chapman* should have demurred separately in order to avail himself of this ground of demurrer. 4. The cause of action accrued, and the statute of limitations began to run, upon the 7th of March, 1854, when the county court found the balance due from the administrator to the heirs, and decreed payment thereof. *Peck v. Cheney*, 4 Wis., 252; *State v. St. Gemme's Adm'r*, 23 Mo., 344; Tay. Stats., 1629, § 44. An action upon the bond, or upon said decree, would not be barred until the lapse of twenty years from that date. Tay. Stats, 1624, § 17, and 1310, § 2. 5. Even if the complaint does not state a cause of action against *Chapman*, he cannot avail himself of that objection by a joint demurrer on that ground, where a cause of action is clearly stated against his codefendant. 19 Wis., 438; 26 id., 219, 544; *The People v. The Mayor*, 28 Barb., 240. Counsel, however, argued at length that the complaint states a good cause of action against *Theophilus Chapman*. At common law the heir was liable upon the bond of his ancestor, if named therein, to the amount of the property descended to him. A devisee was made liable in like manner by statute 3 and 4 W. & M., enacted in 1672–73, and therefore a part of the common law of this state. *Coburn v. Harvey*, 18 Wis., 147. But the personal representatives of the obligor or covenantor were liable, though not named, to the extent of the assets that came to them; and the plaintiff might elect to sue either the real or personal representatives, or both. Broom on Parties to Actions (46 Law Lib.), *116–118. The common law makes the spe-

cialty debt of the ancestor *de facto* that of the heir, and presumes that the heir has assets until he shows the contrary by plea. *Hall v. Bumstead*, 20 Pick., 3. An heir who is expressly bound by the covenant of his ancestor, so that the executor or administrator need not be joined in the suit, may be sued immediately after the death of the ancestor. *Sneed v. Phillips*, 2 J. J. Marsh., 131; *Waller v. Ellis*, 2 Munf., 88. Where the heir takes all the estate, he assumes all the debts, as well those which have been already allowed and proved, as others. *Montgomery v. Oulton*, 18 Tex., 736; *Montgomery v. Jones*, id., 751. Counsel further argued that the decisions in Massachusetts and New York unfavorable to the right of action against heirs prior to administration of the estate, were founded upon the peculiar statutes of those states. *Hall v. Bumstead, supra;* R. S. of N. Y., 1828, vol 2, p. 109, sec. 53; *Roe v. Swezey*, 10 Barb., 247; *Stuart v. Kissam*, 11 id., 271. They then argued that the complaint states a good cause of action against *Theophilus Chapman* under our statutes, read in connection with the common law, citing especially Tay. Stats., ch. 101, § 61, and ch. 147, §§ 29–33, 38, 39, 62.

The following opinion was filed at the January term, 1873.

LYON, J. In the absence of any argument or brief on behalf of the defendants, it is not deemed necessary to enter into any extended discussion of the questions presented for determination by the demurrer to the complaint. We shall therefore add but little to a mere statement of the conclusions to which we have been impelled by the investigation of those questions, and in doing so we will not attempt to follow the order in which they are presented in the demurrer.

I. The action is not barred by the statute of limitations. It is brought upon a sealed instrument, and the cause of action accrued in this state March 7, 1854, which is less than twenty years before the action was commenced. Tay. Stats.,

1524, § 15.  Indeed it was commenced less than twenty years after the bond was executed.

II.  No other ground of demurrer assigned is available to the defendant *Colter*; and, the action not being barred by the statute of limitations, beyond all question the complaint states a cause of action against him.  The rule is, that a joint demurrer by two or more defendants, on the ground that the complaint does not state a cause of action, is bad, if the complaint shows a cause of action against one of them.   *Webster v. Tibbits*, 19 Wis., 438.  Hence this demurrer should have been overruled for that reason, if for no other.

III.  We find nothing in the statute which requires that administration should be had of the estate of James F. Chapman before an action can be maintained by a creditor of the estate against the heirs, legatees or devisees of the deceased; and the very able argument of the learned counsel for the plaintiff has satisfied us that there is no rule of law which prohibits such an action in a case like this, before administration.   The complaint shows that all debts and claims against James F. Chapman, or against his estate, have been paid and discharged, except the claim for which this action was brought, and all of his property, or at least, all of his property in this state, both real and personal, has gone into the hands of his devisee and legatee, *Theophilus Chapman*.   What necessity can there be, then, for incurring the trouble, delay and expense of an administration of the estate?

IV.  We can perceive no good reason why Mary Elizabeth Burns, the other devisee named in the will of James F. Chapman, should be made a party to this action.   She resides out of this state, and has no property in it, and the court cannot get jurisdiction either of her person or her property.   Besides, *all* of the personal property of the estate was bequeathed to the defendant *Theophilus Chapman*, and the same is primarily liable for the payment of claims against the estate, and is of ample value to pay this claim, if payment thereof be adjudged.

V. It is claimed that there is a misjoinder of causes of action, in that a portion at least of the plaintiff's claim did not arise out of the sales of the land by the administrator under the license of the county court, on account of which the bond in suit was given. But we think the complaint shows that this position is not tenable. The administrator received $697 in all, $355 of which was the proceeds of the sales of land. It is a fair inference from certain averments in the complaint, that the balance was received from sales of the personal estate. Such balance is $342. The debts and charges against the estate paid and directed to be paid by the administrator, amount to $371.03. It was the duty of the administrator first to apply the proceeds of the personal estate to the payment of such debts and charges; and, in the absence of averment or proof on the subject, we must presume that he did so. It follows that the whole sum claimed in this action is part of the proceeds of such sales of real estate under the license.

VI. The objection that the complaint does not state facts sufficient to constitute a cause of action, is disposed of by the views above expressed.

Upon the whole case, we are of the opinion that the demurrer should have been overruled.

*By the Court.*— The order of the circuit court sustaining the demurrer is reversed, and the cause remanded for further proceedings according to law.

On a motion for a rehearing, *Messrs. Bushnell & Clark,* for the respondent, argued, 1. That the original complaint contained all the material allegations of the amended complaint, and was demurred to upon the same grounds, and the questions of law raised by the present demurrer are *res adjudicatæ. Pierce v. Kneeland,* 9 Wis., 30; *Hill v. Hoover,* id., 15; *Dwight v. St. John,* 25 N. Y., 203. 2. That the general rule that a joint demurrer of two or more defendants fails if a cause of action is stated against either of them, applies only to the ground "that the

complaint does not state facts sufficient to constitute a cause of action" (*Webster v. Tibbits*, 19 Wis., 448; *Willard v. Reas*, 26 id., 544; *Woodbury v. Sackrider*, 2 Abb. Pr. R., 402; *Peabody v. Ins. Co.*, 20 Barb., 339; *People v. Mayor, etc.*, 28 id., 240); and that the objection to that ground of demurrer because the demurrer was joint, was not taken in the court below, and must therefore be regarded as waived, especially as by the practice of that court, if the objection had been taken there, an amendment would have been allowed immediately, without terms. 3. If *Theophilus Chapman* is liable upon the facts stated in the complaint, it is as *legatee* or *devisee*, and by virtue of the provisions of Tay. Stats., ch. 147. But the provisions of that chapter for a recovery by creditors against *legatees* (secs. 32, 33), clearly contemplate regular proceedings in the probate court to settle the estate, before suit brought; and they permit the creditor to recover only "the value of any assets that may have been paid *by any executor or administrator*" to the legatee or legatees. The complaint shows that there was no administration, and consequently that nothing was paid to defendant *Chapman* by an executor or administrator. The complaint does not show that the deceased testator did not leave other lands than those in Wisconsin and Indiana; and if other land *descended*, they are liable for the testator's debts before bequests or devises. Tay. Stats., 1209, § 33; 4 Bac. Abr., 118. Under secs. 38, 39, 62, 63, 65 of ch. 147, Tay. Stats., it is plain that defendant *Chapman* is not liable as *devisee*, upon the allegations of the complaint, because it does not appear that "the personal assets, and the real estate of the testator, descended to his heirs, were insufficient to discharge" the debts; nor does it appear "that after due proceedings before the proper county judge, and at law, the creditor has been unable to recover such debts or some part thereof from the personal representatives of the testator, or from his next of kin, or legatees, or from his heirs." On the contrary the complaint shows that the personal assets were sufficient to pay this debt, and that

no " due proceedings " have been had ; while it does not show whether or not any real estate descended to the heirs.    As for ·sec. 61, ch. 101, Tay. Stats. (p. 1236), it clearly undertakes to provide an action only after the appointment and qualification of an executor or administrator.    The reason for it is obvious. The appointment and qualification of an executor or administrator debars creditors from having an administrator of their own choice appointed.    The neglect of an executor or administrator to give creditors an opportunity to prove their claims, evinces such hostility toward them that in such case the law gives a right of action directly against the personal representative ; and if he has delivered assets to heirs, devisees or legatees, then it gives such action against them also.    True, the creditor might himself have commissioners appointed, but he would still be largely subject to the movements of the personal representative, and would be greatly injured by delays or opposition caused by his hostility.    Hence this statute gives a summary remedy in the circuit court.    After a brief review of the common law on the subject, counsel argued that our statute (Tay. Stats., ch. 147), has revised the whole matter of the liability of the next of kin, legatees, heirs and devisees for debts of their decedent, and has thus repealed the common law, at least as applicable to a case like this.    Smith's Com., 904, § 78.    Each modern change of the law upon this subject both in our own country and in England, so far as we have been able to ascertain, has been an advance in the direction of *equality among creditors* ; and to insure this it has been held, as by the courts of Massachusetts and New York, that a creditor must first exhaust his remedy in the probate court before he can sue the heir.    The statute of New York provided that " no suit shall be brought against the heirs or devisees of any real estate in order to charge them with the debts of the testator or intestate *within three years after the granting* of letters of administration," etc. 2 R. S. of N. Y., 1828, p. 109, § 53.    It does not *prohibit* the bringing of such actions *before* administration granted.    Yet

in that state the creditor must first exhaust his remedy in the probate court before proceeding against the heir (*Mersereau v. Ryeress*, 3 N. Y., 261; *Stuart v. Kissam*, 11 Barb., 271, and cases there cited), or he must show that the deceased left no assets in the state at the time of his death, and none have come into any county since, and therefore he would be remediless there. *Hollister v. Hollister*, 10 How. Pr. R., 532. If *Chapman* may be sued in this case before administration because the common law gave such action, then all the rights and privileges of plaintiffs in such actions at the common law must follow. Our statute relating to the order of the payment of debts when assets are insufficient, only applies to assets received *by an executor or administrator* ; and the order of preference given in ch. 147 applies only to debts recoverable as provided in that chapter. Tay. Stat., 1233, § 38, and 1723, § 43. The first judgment against next of kin, heir, legatee or devisee must then be first paid *in full*, even to the exclusion of other creditors in equal degree. 2 Wms. ·on Ex., 887; 2 Black. Com., 512 and note (36). Such action might be brought immediately after the ancestor's death (*Sneed v. Phillips*, 2 J. J. Marsh., 131 ; *Waller's Ex'r v. Ellis*, 2 Munf., 88); and thus one creditor might swallow up a whole estate to the exclusion of all others. And so creditors might sue the heir immediately after his ancestor's death, or at any time afterwards within the statute of limitations, even though the personal representatives of the deceased were in the mean time using all diligence to settle the estate in the probate court.

*Barber & Clementson, contra.*

The appeal was finally disposed of at the June term, 1873.

LYON, J. This cause was decided at the last term without the benefit of an argument on the part of the defendants. The learned counsel for the defendants having been delayed in the preparation of an argument by sickness, the writer assured him that it was not probable that the cause would be reached in the

consultation room before May, and that if his argument were then in our hands it would be in time. The cause was reached at an earlier date, and decided, the above conversation having been entirely forgotten. But we have carefully reviewed the whole case on this motion for a rehearing; and, while we have reached the conclusion that it was correctly decided in the first instance, we think it due to the counsel, to his clients, and to the court, that we give, briefly, our views upon the principal points urged in support of the motion for a rehearing of the cause.

I. A demurrer to the original complaint, setting forth various grounds of demurrer, one of which was that the complaint did not state facts sufficient to constitute a cause of action, was sustained by the court. The plaintiff acquiesced in such ruling, and amended his complaint. The defendants interposed substantially the same demurrer to the amended complaint, and this appeal is from the order sustaining the last demurrer. It is now claimed that the complaint was not materially amended, and that the decision of the court on the first demurrer is *res adjudicata* on the question of the sufficiency of the amended complaint. An examination of the original and amended complaints discloses the fact that the averment in the latter that the defendant *Chapman* is the devisee of all the real estate of James F. Chapman *situated in this state*, is not contained in the original complaint. There are other points of difference between the two complaints, but it is not necessary to state them in detail. The demurrer to the original complaint may have been sustained because of the absence of these averments. The record does not inform us of the grounds upon which it was sustained. The complaint having been thus amended and changed, we are quite unable to perceive how the doctrine of *res adjudicata* can be applicable to the amended complaint. Indeed, it is only claimed to be applicable on the assumption that the two pleadings are alike. This hypothesis being erroneous, it is unnecessary to the decision of the case to consider and

decide what would be the rule of law, were the hypothesis correct.

II. The counsel for the defendants seems to think that the demurrer to the amended complaint was sustained only as to the defendant *Chapman*. This is a mistake. The demurrer was jointly interposed by both of the defendants, and was sustained generally — that is, it was sustained in favor of both of them; and should final judgment be rendered on it, the same will be for a dismissal of the complaint, with costs, in favor of both. This alone is an error for which the order appealed from must necessarily be reversed. It is not a mere technical error, made such by rules of practice, but it is a substantial one, in that it is adjudged that no cause of action against the defendant *Colter* is stated in the amended complaint, when in fact a sufficient cause of action against him is therein stated.

III. It will be observed that the amended complaint fails to aver that *all* of the real estate of which James F. Chapman died seized, was disposed of by his will. It only avers that all such real estate in Wisconsin was so disposed of. He may have left real property in some other state or country, which, upon his death, descended to his heirs. It is claimed by the learned counsel for the defendants, in a very ingenious argument founded upon the several provisions of the statute relating to the subject, that if James F. Chapman left any real estate not disposed of by his will, the same is primarily liable for his debts, and that the plaintiff must exhaust his remedy against such real estate before he can maintain an action against the defendant *Chapman* as a legatee or devisee. If this is a correct view of the law, it would seem to follow that in order to state a cause of action against the defendant *Chapman*, the plaintiff should aver that the testator left no real estate undisposed of by his will, or, leaving real estate so undisposed of, that it is insufficient to satisfy the plaintiff's demand.

Without discussing in detail the positions contended for in the argument, I will proceed to state my views as to the con-

struction which should be given to the several statutory provisions applicable to the case. Ch. 97 of the Revised Statutes, entitled "Of wills of real and personal estate," contains the following provisions:

"SECTION 31. If the testator shall make provision by his will, or designate the estate to be appropriated for the payment of his debts, the expenses of administration, or family expenses, they shall be paid according to the provisions of the will, and out of the estate thus appropriated, or so far as the same may be sufficient.

"SECTION 32. If the provisions made by the will, or the estate appropriated, shall not be sufficient to pay the debts, expenses of administration and family expenses, such part of the estate, real or personal, as shall not have been disposed of by the will, if any, shall be appropriated, according to the provisions of the law for that purpose." (.Tay. Stats, 1208–9, §§ 32 & 33.)

It is argued that by virtue of these provisions, if lands not devised descended to the heirs, they are liable for the debts of the testator to the extent of the value of such lands. It seems to me that no such result necessarily follows. This statute does not make the real and personal estate not disposed of by the will *primarily* liable for the debts of the testator, but only provides that the same shall be appropriated to the payment of such debts according to the provisions of law. It establishes the *ultimate* liability, but does not enact in what cases the liability shall become absolute. To ascertain the conditions which render a legatee or devisee liable for such debts, and the nature and extent of his liability, we must look for other provisions of the statute ; and those we find in ch. 147, R. S., in the subdivision entitled, "Of proceedings against next of kin, heirs, legatees and devisees, in certain cases." Sec. 28 is as follows : " Actions by creditors of any deceased persons to recover the value of any assets that may have been paid by any executor or administrator to any legatees of their testator,

may be brought against all of such legatees jointly, or against any single legatee separately." Sec. 29 enacts that "In such action the plaintiff shall not be entitled to recover unless he shows, 1. That no assets were delivered by the executor or administrator to the next of kin ; or 2. That the value of such assets has been recovered by some other creditor; or 3. That such assets are not sufficient to satisfy the demand of the plaintiff."

A literal construction of this statute is contended for, and it is claimed that no action can be maintained under it against a legatee unless he has received assets *from an executor or administrator*. I am unable to perceive any good reason why a legatee should be liable to an action by a creditor of the testator on account of assets so received, and not be so liable, if, as in this case, he took possession of the assets bequeathed to him without the intervention of the personal representative. I can not believe that the statute contemplates any such result. The form of expression used in the statute may have been employed to indicate that it referred to those assets which go to the personal representative, that is, personal assets, and not to real assets, which descend to the heirs or devisees. However this may be, it seems to me that it would do violence to the spirit of the statute to hold that the form of expression employed therein limits the right of action to cases where the assets were actually delivered to the legatee by the executor or administrator. Suppose the next of kin had received sufficient assets to pay the debts of the estate, but had not received them from the executor or administrator. Does any one believe that in such case an action could be maintained against the legatee because the plaintiff could show that the next of kin had not received assets *from the executor or administrator?* Yet such would be the logical result of the construction contended for by counsel.

But we proceed to examine other provisions of the same chapter. Section 35 exempts an heir from liability for the

debts of his ancestor, unless it appear that the personal assets of the latter are insufficient to pay the same. The word "heir," as here used, clearly means a person to whom real estate of the ancestor has descended. A clear inference is also to be drawn from this section, that personal assets in the hands of a legatee are liable for such debts before the real property which descended to the heir is liable therefor. Section 58 provides that a devisee shall not be liable for the debts of his testator, unless the personal assets of the estate and the real estate which descended to the heirs, are insufficient to pay the same, and then the devisee is only liable for the deficiency.

The foregoing statutory provisions are not applicable to cases in which the testator by his will appropriates certain of his property to the payment of his debts, unless the property so appropriated is insufficient for that purpose.

From these and other provisions of the statute, I deduce the following rules:

1. The debts of a deceased person are primarily payable out of the personal assets of his estate.

2. As between legatee and the next of kin, the latter are first liable for such debts to the extent of the value of the assets received by them, and the legatee is only liable for the deficiency, such liability being also limited by the value of the assets which have come to his hands.

3. In the absence of personal assets, the debts must be paid out of the real estate.

4. The rule between legatee and next of kin, with the limitations above stated, is applicable to devisee and heir — the latter being primarily liable for the debts, and the devisee being liable only for the deficiency.

In the light of these rules the problem under consideration is readily solved. The defendant *Chapman* is sued as legatee under his father's will, for the only debt which exists against the estate of the testator. The amended complaint shows that such legatee has received all of the personal assets belonging

to the estate, and more than sufficient in value to pay the plaintiff's demand. It therefore states a cause of action against the legatee, as such.

It is believed that the other material points in the case are sufficiently discussed in the former opinion; and it is sufficient to say that we adhere to the views there expressed.

The motion for a rehearing must be denied; but, under the circumstances of this case, I think that no costs, except the fees of the clerk of this court, should be imposed.

*By the Court.* — Ordered accordingly.